ALICE M. BATCHELDER, Circuit
Judge, dissenting.
I agree that the complaint sufficiently alleges that WebWatcher “intercepts” communications within the meaning of the Wiretap Act, but my agreement with the majority ends there. Regarding his § 2511 claim, Luis’s complaint does not allege that Awareness itself intercepted Luis’s communications. As for § 2512, even assuming that Luis alleges a violation of that section, the Wiretap Act does not provide a private cause of action. I would affirm.
Luis’s § 2511 argument on appeal is admittedly compelling: Awareness, by operating the online software central to Web-Watcher’s functionality, bears the same level of culpability as its customer for the software’s illegal interceptions. But this theory of the case[1] is not alleged in the complaint. No matter how liberally we read Luis’s complaint, he simply does not allege that Awareness was the one intentionally doing the intercepting.
*644 The fact is that the complaint never names Awareness in the context of Web-Watcher’s operation. Awareness is named only twice. Initially, in paragraph 12, Awareness is identified as one of the defendants; that paragraph merely states that the company “is the maker of Web-Watcher computer monitoring software ... and is responsible for all marketing of this product.” The only other mention is in paragraph 96 of the complaint’s substantive allegations, which focuses on Awareness’s marketing and design of WebWatcher.[2] The allegations include intentionally marketing WebWatcher to spouses, knowing that WebWatcher could be used surreptitiously, and knowing that it should have been modified to prevent any illegal use. The bulk of Luis’s factual allegations describe the conduct of other defendants now dismissed from the suit.
The majority accepts Luis’s argument on appeal that the complaint directly implicates Awareness in paragraph 77. But this reading is much more than just charitable — it grasps at straws. In describing how WebWatcher operates, Paragraph 77 uses only a possessive pronoun that lacks any antecedent: “WebWatcher immediately and instantaneously routs the intercepted communications to their servers located in California to be stored for their subscribers to later retrieve at their leisure.” Awareness is neither named nor the subject of the action. This paragraph, located amidst Luis’s allegations against the other defendants, does not give rise to the plausible inference that Awareness intentionally intercepted Luis’s communications. See Ashcroft v. Iqbal, 556 U.S. 662, 682-83, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).
Even setting aside Twombly and Iqbal’s pleading standards (as the majority does), the main purpose of a complaint has always been “to ‘give the defendant fair notice of what the claim is and the grounds upon which it rests.’ ” Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Luis’s complaint fails even this lenient standard. It does not put Awareness on notice that it — the manufacturer and seller — could be liable for anonymous customer Joseph Zang’s misuse of the WebWatcher. Luis’s novel theory of liability does not appear even to have been tried, much less to have been successful, in any previous case. Neither Awareness nor the district court should have been expected to divine it from Luis’s allegations against the other defendants. I would affirm the district court’s dismissal of Luis’s § 2511 claim against Awareness. I would affirm the dismissal of Luis’s state-law claims for the same reason. See Nix v. O’Malley, 160 F.3d 343, 348 (6th Cir. 1998) (interpreting the Ohio Wiretap Act identically to the federal Wiretap Act).
As for Luis’s § 2512 claim against Awareness, I am uncertain whether the complaint’s factual allegations and the attached marketing materials plausibly indicate that the WebWatcher is “primarily useful for the purpose of the surreptitious interception of ... electronic communications.” See 18 U.S.C. § 2512(l)(b). A monitoring device like the WebWatcher is plainly useful for purposes wholly consistent with full disclosure, including an employer’s monitoring of its employees or parental monitoring of children. But even accepting that Luis has alleged a violation of § 2512, the Wiretap Act lacks a private right of action to remedy that violation. The majority’s contrary conclusion distorts the statutory text and lacks any standard to guide, future litigants.
*645 The Wiretap Act, a criminal statute, contains a private right of action to remedy certain violations. The provision creating this right of action reads as follows:
[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this, chapter may in a civil action recover from the person or entity ... which engaged in that violation such relief as may be appropriate.
§ 2520(a). The series of verbs “intercepted, disclosed, or ... used” comes from § 2511(l)(a)-(e). There is no dispute that a plaintiff must be the victim of a § 2511 violation in order to sue under § 2520(a).
But who may be liable under this provision? As the majority correctly notes, the phrase “engaged in that violation” narrows the category of possible defendants. “[TJhat violation” plainly refers back to the earlier verb series; a proper defendant is one who “engaged in” an illegal “intercept[ion], disclos[ure], or ... use[ ].” Every circuit court that has addressed the issue has so held. See DirecTV, Inc. v. Treworgy, 373 F.3d 1124, 1127 (11th Cir. 2004) (holding that § 2520(a) does not create a private right of action for possession of a device in violation of § 2512(l)(b), because the plain language limits the class of defendants to individuals or entities that committed the violation suffered by the plaintiff); Peavy v. WFAA-TV,, Inc., 221 F.3d 158, 169 (5th Cir. 2000) (holding that § 2520(a) provides a right of action only against a defendant who “intercepted, disclosed, or used” the covered communications); see also DirecTV Inc. v. Robson, 420 F.3d 532, 538-39 (5th Cir. 2005) (noting that § 2520(a)- does not provide a private right of action “for merely possessing or purchasing” a device in violation of § 2512(l)(b)); DirecTV, Inc. v. Nicholas, 403 F.3d 223, 227 (4th Cir. 2005) (quoting approvingly that court’s earlier conclusion in Flowers v. Tandy Corp., 773 F.2d 585, 589 (4th Cir. 1985), that “[t]he express language of § 2520 is ... not susceptible to a construction which would provide a cause of action against one who manufactures or sells a device in violation of § 2512 but does not engage in conduct violative of § 2511”).
Having come this far, the majority inexplicably fails to reach the only logical conclusion: a defendant who violates only § 2512 — which criminalizes “mailing],” “manufacturing],” “sell[ing],” “assembling],” “possessing],” and “advertising]” devices “primarily useful for” such interception — faces no civil liability. Manufacture, marketing, and sale do not “engage[ ]” the manufacturer or seller in the subsequent use of the device by someone else.
The majority distinguishes Treworgy and Robson, which referred specifically to possession of a device, but it does not consider the other above-cited cases. See Peavy, 221 F.3d at 169 (rejecting liability for illegally procuring an illegal interception); Flowers, 773 F.2d at 589 (rejecting liability for illegal manufacture or sale). And the only supporting authority the majority can muster is an alternative holding from an out-of-circuit district court. See DirecTV, Inc. v. Tasche, 316 F.Supp.2d 783, 789 (E.D. Wis. 2004) (adopting in the first instance a broad interpretation of § 2520 recognizing a private right of action for all Wiretap Act violations).
Nor does the majority cogently explain why manufacturing, marketing, and selling should be treated differently from possession. Instead of addressing these violations categorically, the majority dives into the facts of this case: Awareness took an “active role.” This approach introduces two flaws.
As a factual matter, the opinion confuses Awareness’s alleged violations of § 2512 with violations of § 2511. The majority says that Luis can sue Awareness for vio *646 lating § 2512 because of Awareness’s “active[] engagement] in the operation of WebWatcher by maintaining the servers” that stored intercepted communications. But that is exactly the activity that constitutes the violation of § 2511. It has nothing to do with intentionally “manufacturing], assembling], possessing], or selling] any” device, the activity prohibited by § 2512.
But even setting aside this confusion, the majority’s nebulous, fact-based analysis is hardly a reasoned way to determine whether a cause of action exists. The majority’s holding, if prescriptive, will result in case-by-case determinations of whether this or that defendant’s actions rose to the level of “engagement” in a § 2511 violation. And although “engagement” is apparently broader than actually committing the violation, the majority’s opinion gives no guidance as to where the line is to be drawn. There is no reason to inject such indeterminacy into the start of every Wiretap Act lawsuit.
The simple alternative to this whole muddle is apparent from a straightforward reading of the statutory text. It has been adopted by every circuit to consider the issue until now. The plain meaning of § 2520(a) allows a plaintiff to recover only from a defendant who personally intercepted, disclosed, or used his communications in violation of § 2511.
I respectfully dissent.

. Luis’s current theory of- his case against Awareness is noticeably absent from his opposition to Awareness's motion to dismiss. It first appears in his objections to the magistrate judge's R&R. Inexplicably, Awareness did not raise the issue of waiver, thereby itself forfeiting an otherwise-sound basis for affir-mance.

. Luis’s opposition to Awareness’s motion to dismiss also focuses on Awareness’s actions in manufacturing, marketing, and selling Web-Watcher.